UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,
Plaintiff,
vs.
ANDREW MEYERS,
Defendant.

Case No. 5:24-cr-00405-CAB-1
5:25-cr-00634-CAB-1
Akron, Ohio
Thursday, January 22, 2026

TRANSCRIPT OF ARRAIGNMENT AND CHANGE OF PLEA PROCEEDINGS
BEFORE THE HONORABLE AMANDA M. KNAPP
UNITED STATES MAGISTRATE JUDGE

Official Court Reporter: Stacey L. Kiprotich, RMR, CRR
United States District Court
1716 Spielbusch Avenue, Suite 120
Toledo, Ohio 43604
(419) 213-5520
stacey_kiprotich@ohnd.uscourts.gov

Proceedings recorded by mechanical stenography from a digital audio recording, transcript produced by computer-aided transcription.

APPEARANCES:

For the Government: Office of the U.S. Attorney
Northern District of Ohio
**By**: Joseph P. Dangelo, *Esq.*
208 Federal Building
2 South Main Street
Akron, OH 44308
330-761-0530
joseph.dangelo@usdoj.gov

For the Defendant: DiCaudo Pitchford & Yoder
**By**: J. Reid Yoder, *Esq.*
3rd Floor
209 South Main Street
Akron, OH 44308
330-762-7477
ryoder@dpylaw.com

**Thursday, January 22, 2026**

**- - -**

**(Proceedings commenced at 2:29 p.m.)**

**- - -**

COURTROOM DEPUTY: All rise.

This Honorable United States Court for the Northern District of Ohio is now open for the transaction of business, the Honorable Amanda M. Knapp presiding.

Please be seated.

Your Honor, the cases before the Court carries Case Numbers 5:24-cr-405 and 5:25-cr-634, *United States of America versus Andrew Meyers.*

THE COURT: All right. Good afternoon, everyone.

Can I have appearances, please, from counsel.

MR. DANGELO: Good afternoon, Your Honor.

Joe Dangelo on behalf of the United States.

MR. YODER: Your Honor, good afternoon.

Reid Yoder appearing on behalf of Andrew Meyers. Mr. Meyers is seated to my right.

THE COURT: All right. And I can see Mr. Meyers there. Good afternoon, sir.

THE DEFENDANT: Good afternoon.

THE COURT: And we've also got Probation Officer Motley. Good afternoon, Officer Motley.

PROBATION OFFICER: Good afternoon, Your Honor.

THE COURT: All right. Mr. Meyers, we're here today for an arraignment and plea hearing in Case 25-cr-634, and a change of plea hearing in 24-cr-405. I've been informed that Mr. Meyers intends to plead guilty to Count 1 of the indictment in 24-cr-405, and to Counts 1 through 5 of the information in 25-cr-634.

Mr. Yoder, is that correct?

MR. YODER: Your Honor, that is accurate. I also would like to add that there was some typographical errors that were made prior to coming on the record today. We appreciate the Court's time allowing Mr. Meyers to review it and make sure that it's accurate and that he's had an opportunity to review the entire thing before we go forward with the plea today. We thought that was important to do. He has done that, Your Honor. He's initialed each page, and he's signed the last page and is ready to proceed.

THE COURT: All right. Thank you.

And just for clarity on the record, the Court was provided with an earlier copy of the plea agreement that had some corrections that needed to be made. A clean copy was reviewed with Mr. Meyers and counsel, and signed and initialed by all the parties.

Am I reciting that correctly, Mr. Yoder?

MR. YODER: That is correct, Your Honor.

THE COURT: And Mr. Dangelo, do I have that correct?

MR. DANGELO: That is correct, Judge.

THE COURT: Thank you.

All right. And I understand that there is a plea agreement that forms the basis for Mr. Meyers' intended plea today.

Is that correct, Mr. Yoder?

MR. YODER: Yes, Your Honor.

THE COURT: Thank you.

All right. And Mr. Meyers, as I indicated, this is an arraignment and plea hearing, as well as a change of plea hearing. The purpose of this hearing is for me to determine the many rights -- that you understand the many rights that you will be surrendering if you plead guilty in both cases.

Before I can accept your plea, I must make a determination as to the following:

First, whether I you consent to my taking your plea.

Second, whether you are competent to plead at this time.

Third, whether you understand the constitutional rights that you will be waiving if I recommend that your guilty plea be entered.

Fourth, whether you fully understand the nature of the

charges against you, including the maximum possible penalties and any mandatory minimum penalties.

Fifth, whether there is a factual basis for your plea.

And, finally, whether that plea is voluntarily.

You should feel free to ask me questions at any time during today's proceeding, especially if you do not understand something that I have said.

Even though you have expressed an intent to plead guilty, you are welcome to change your mind at any time before I accept your plea at the end of this proceeding.

Mr. Dangelo, is this a matter to which the Crime Victims' Rights Act applies?

MR. DANGELO: No, Your Honor.

THE COURT: Thank you.

All right. Mr. Meyers, the first matter we need to address today is your waiver of your right to have this proceeding conducted by an Article III Judge. Sir, do you understand that you have a right to have these proceedings conducted by a United States District Judge? That is a judicial officer who has been appointed pursuant to Article III of the United States Constitution for a term of life.

Do you understand you have that right?

THE DEFENDANT: I do.

THE COURT: All right. Mr. Yoder, would you move that microphone a little closer to Mr. Meyers? Thank

you so much.

Now, sir, I am not a District Judge. I am a United States Magistrate Judge, and that is a judicial officer who serves an eight-year term, subject to reappointment.

Do you understand that I am not a United States District Judge?

THE DEFENDANT: I do.

THE COURT: Have you discussed with your attorney, Mr. Yoder, that you may consent to my jurisdiction in these proceedings?

THE DEFENDANT: Yes.

THE COURT: And did you conclude based on that conversation that it is in your best interest to proceed before me today, even though I am not a District Judge?

THE DEFENDANT: Yes.

THE COURT: Now, I have a copy of two consent forms, one for each of the two cases that are at issue here, both titled "Consent to Order of Referral to Magistrate Judge for Purposes of Receiving Defendant's Plea of Guilty." If I look at both of those documents on the second page, there is a line labeled "Defendant" with a signature on it.

Is that your signature on both consent forms?

THE DEFENDANT: Correct.

THE COURT: All right. And before you signed those forms, did you have an opportunity to go over them

with your attorney and get answers to all of the questions you had about what it means to consent to my jurisdiction?

THE DEFENDANT: Yes.

THE COURT: Mr. Yoder, did you advise Mr. Meyers in reviewing and signing and executing the consent forms?

MR. YODER: I did, Your Honor.

THE COURT: Thank you.

Mr. Meyers, this case is assigned to District Judge Boyko. Do you voluntarily and knowingly give up your right to plead before Judge Boyko or another Article III Judge, and do you voluntarily consent to proceed before me today?

THE DEFENDANT: Yes, I do.

THE COURT: On review of the consent forms and Mr. Meyers' answers to my questions in court, I find his consent to be knowing and voluntary.

All right. Mr. Meyers, in a moment, you are going to be placed under oath, and I'm going to ask you some questions.

For your understanding, there is an audio recording that's being made of this proceeding. What that means, for practical purposes, if you choose to answer my questions today, please keep your voice up and give me your answers in words. If you do not understand a question, please ask for clarification. You may also consult privately with your

attorney, Mr. Yoder, at any time.

Do you understand my instructions?

THE DEFENDANT: Yes.

THE COURT: All right. Before I swear you in, I also want to remind you that you do have a right to remain silent under the Fifth Amendment of the United States Constitution. You are not required to make any statements today, but anything that you say may be used against you.

Before receiving your guilty plea, I will need to ask you several questions to assure that your plea is valid. By answering those questions, you will be making statements against your interests, and you will incriminate yourself.

Do you understand, Mr. Meyers, by proceeding with a guilty plea today, you will necessarily be waiving your right to remain silent? Do you understand that?

THE DEFENDANT: Yes.

THE COURT: All right.

Would the clerk please administer the witness oath.

COURTROOM DEPUTY: Please raise your right hand the best that you can.

(Defendant was sworn.)

THE DEFENDANT: I do.

THE COURT: All right. Mr. Meyers, the next thing I need to do today is to determine whether you are competent to enter a knowing plea today. For that purpose,

I'm going to ask you some background questions.

THE DEFENDANT: Okay.

THE COURT: First of all, would you tell me, please, your full name?

THE DEFENDANT: Andrew James Meyers.

THE COURT: And how old are you, sir?

THE DEFENDANT: Twenty-eight.

THE COURT: How far did you go in school?

THE DEFENDANT: I graduated high school.

THE COURT: Well, I understand from your answers to my questions so far today that you can both speak and understand the English language.

THE DEFENDANT: I can.

THE COURT: Are you also able to read and write in English without assistance?

THE DEFENDANT: I can.

THE COURT: Where were you born?

THE DEFENDANT: In Ohio.

THE COURT: Are you a citizen of the United States?

THE DEFENDANT: Yes.

THE COURT: Have you had any recent employment?

THE DEFENDANT: Yes. I work for myself.

THE COURT: Okay. What sort of work did you

do?

THE DEFENDANT: Plowing and property maintenance.

THE COURT: In the last 12 months, have you received treatment for a mental illness, drug addiction, or alcohol addiction?

THE DEFENDANT: No.

THE COURT: In the last 24 hours, have you taken any medication, drugs, alcohol, or any other substance that might make it difficult for you to understand what's happening here today?

THE DEFENDANT: No.

THE COURT: Do you know why you're here today?

THE DEFENDANT: I do.

THE COURT: Do you understand what the purpose of this proceeding is?

THE DEFENDANT: I do.

THE COURT: Would you please tell me briefly in your own words what you believe the purpose of today's proceeding is?

THE DEFENDANT: To plead guilty to the charges brought against me.

THE COURT: Thank you.

Are you currently on probation, parole, or supervised release for any other cases, other than the two that we're

here for today?

THE DEFENDANT: Yes.

THE COURT: All right. And do you understand that pleading guilty today may adversely affect your probation, parole, or supervised release in that other case?

THE DEFENDANT: Yes.

THE COURT: Mr. Yoder, have you discussed the case with Mr. Meyers?

MR. YODER: Yes, I have, Your Honor.

THE COURT: And do you believe that he understands the nature and purpose of today's proceedings?

MR. YODER: Yes, I do.

THE COURT: Do you have any concerns regarding his competency to proceed?

MR. YODER: None whatsoever.

THE COURT: Thank you.

Mr. Dangelo, does the United States have any concerns regarding Mr. Meyers' competency to proceed?

MR. DANGELO: No, Your Honor.

THE COURT: All right. Mr. Meyers, at the time of your prior appearances, you were advised of your right to counsel. I will advise you again that you have a right to be represented by an attorney at every stage of these proceedings. If you are not able to afford an attorney, the Court will appoint one to represent you

without cost.

Do you understand your right to counsel?

THE DEFENDANT: I do.

THE COURT: And it's my understanding, sir, that you have retained Mr. Yoder to represent you in this case.

Is that correct?

THE DEFENDANT: Yes, it is.

THE COURT: And do you understand that Mr. Yoder is representing you as your attorney today?

THE DEFENDANT: I do.

THE COURT: Have you received a copy of the indictment in 24-cr-405 that contains the written charge against you?

THE DEFENDANT: Yes.

THE COURT: Have you also received a copy of the information in case 25-cr-634 that contains the additional written charges made against you?

(Discussion held off the record between Mr. Yoder and the defendant.)

THE DEFENDANT: Yes.

THE COURT: I'm sorry. "Yes," you've received both?

THE DEFENDANT: Yes.

THE COURT: Okay. Have you had sufficient

time to talk with your attorney, Mr. Yoder, about both the indictment and the information, the charges against you, and your response to those charges in the two cases?

THE DEFENDANT: Yes.

THE COURT: Have you discussed all possible defenses to the charges against you?

THE DEFENDANT: Yes.

THE COURT: Have you told Mr. Yoder everything that you know about the two cases?

THE DEFENDANT: Yes.

THE COURT: Are you completely satisfied with your attorney's representation and the advice that he has given you?

THE DEFENDANT: Yes.

THE COURT: As a reminder, you may stop at any time during today's proceedings if you would like to confer privately with your attorney.

Mr. Yoder, have you had sufficient time to consult with and prepare your client at every stage of these proceedings?

MR. YODER: Yes, I have, Your Honor.

THE COURT: All right. Because we are addressing in the second case, 25-cr-634, an information as opposed to an indictment, I have here in front of me a waiver of an indictment form.

Mr. Yoder, do I understand correctly that Mr. Meyers intends to waive his right to an indictment in the case 25-cr-634?

MR. YODER: That's my understanding.

THE COURT: Thank you.

Mr. Meyers, I have here in front of me a waiver of indictment form in the case 25-cr-634. And at the bottom of that form, there is this line labeled "Defendant's signature," with his signature on it. Is that your signature on the waiver of indictment form?

THE DEFENDANT: I believe it is.

MR. YODER: I was looking for it, Judge. I don't think I brought the bill of information. But that is -- I can tell you, Your Honor, that he did execute it. My signature, I believe, is also on it as well.

(Discussion held off the record between Mr. Yoder and the defendant.)

MR. YODER: Thank you, Your Honor.

THE COURT: All right. And that's your signature on the waiver form, sir?

THE DEFENDANT: Yes.

THE COURT: All right. And did you discuss the waiver of an indictment with your attorney?

THE DEFENDANT: Yes.

THE COURT: Do you understand that you have a

right to have the charges made against you presented to the grand jury and have the grand jury decide whether probable cause exists to return an indictment against you?

THE DEFENDANT: Yes.

THE COURT: Do you understand by signing that waiver, you will be giving up your right to have the charges against you presented to the grand jury and your right to have the grand jury decide whether to return an indictment?

THE DEFENDANT: Yes.

THE COURT: I'm going to find the waiver of the indictment has been voluntarily made.

Mr. Dangelo, pursuant to the Due Process Protections Act, the government is reminded of its obligations under *Brady v. Maryland* at 373 U.S. 83 to disclose evidence that is favorable to Mr. Meyers and material to his guilt or punishment. The government is ordered to comply with *Brady* and its progeny. Failure to do so in a timely manner may result in consequences, which may include the dismissal of the indictment or information, exclusion of government evidence or witnesses, adverse jury instructions, dismissal of charges, contempt proceedings, sanctions by the Court, or any other remedy that is just under the circumstances.

Mr. Dangelo, does the United States acknowledge its obligations under the Due Process Protections Act?

MR. DANGELO: Yes, Your Honor.

THE COURT: All right. Mr. Meyers, by proceeding with a guilty plea, you will be giving up several constitutional rights.

Have you reviewed those constitutional rights with your attorney?

THE DEFENDANT: I have.

THE COURT: All right. I'm going to review those constitutional rights again with you today on the record so that I can be assured that you understand them.

First of all, Mr. Meyers, you have the right to stand by your plea of not guilty and to require the government to proceed to trial. You have the right to a speedy trial, either to the Court or to a jury, and you have the right to assistance of counsel at trial.

At trial, you would not have to prove that you are innocent. You would be presumed innocent. The government would be required to prove your guilt by competent evidence beyond a reasonable doubt as to each element of the offenses that are charged against you.

If your trial goes to a jury, prospective jurors would be summoned to the courthouse and you and your lawyer would have an opportunity to participate in the jury selection process.

The members of the jury would have to consider each count separately and would have to agree unanimously on the

verdict.

Do you understand your right to trial?

MR. YODER: I do.

THE COURT: Do you understand that you will be giving up that right if you plead guilty?

THE DEFENDANT: I do.

THE COURT: At trial, you would have the right to compulsory process. That is the right to issue subpoenas to require the attendance of witnesses to testify in your defense.

Do you understand your right to compulsory process?

THE DEFENDANT: Yes.

THE COURT: Do you understand that by pleading guilty, you will give up that right?

THE DEFENDANT: I do.

THE COURT: At trial, you would also have the right to hear, see, and cross-examine all witnesses that the government might bring to testify against you.

Do you understand your right to confront witnesses?

THE DEFENDANT: I do.

THE COURT: Do you understand you will be giving up that right if you plead guilty?

THE DEFENDANT: I do.

THE COURT: You would have the right to remain silent at trial. While you would have the right to testify,

if you chose to do so, you could not be forced or required to testify. If you chose not to testify, no inference or suggestion of guilt could be made or drawn from the fact that you did not testify.

Do you understand your right to remain silent?

THE DEFENDANT: I do.

THE COURT: Do you understand that by pleading guilty, you will give up that right?

THE DEFENDANT: I do.

THE COURT: As I stated earlier, if you proceed today with your decision to plead guilty, you will also give up your right not to incriminate yourself. In taking your guilty plea, I will need to ask you questions about what you did in order to satisfy myself that you are guilty as charged. You will also have to acknowledge your guilt to make a valid guilty plea.

Do you understand your right not to incriminate yourself?

THE DEFENDANT: Yes.

THE COURT: Do you understand you will give up that right if you plead guilty today?

THE DEFENDANT: Yes.

THE COURT: Do you understand that you have a right to plead not guilty even if you are guilty?

THE DEFENDANT: Yes.

THE COURT: Do you understand if you plead guilty, you are waiving all of the rights that I have described, and if your plea is accepted, there will be no trial?

THE DEFENDANT: Yes.

THE COURT: All right. I just wanted to -- I can ask -- would you like me to ask the question again? Or did you hear the question?

THE DEFENDANT: You can ask again. I was reading as well.

THE COURT: That's all right, that's all right.

Do you understand that by pleading guilty, you are waiving all of the rights I have described, and if your plea is accepted, there will be no trial?

THE DEFENDANT: Yes, yes.

THE COURT: If you plead guilty, I will recommend a finding of guilty be entered, the District Judge will consider my recommendation, and if he concurs, then he will enter a finding of guilty on the record and sentence you on the basis of your plea after considering a presentence investigation.

Do you understand that?

THE DEFENDANT: I do.

THE COURT: Do you understand that by pleading

guilty, you will be deprived of valuable civil rights, either for a period of time or permanently, such as the right to vote, the right to hold public office, and the right to serve on a jury?

THE DEFENDANT: I do.

THE COURT: Do you understand that by pleading guilty to a felony in federal court, you may never again be legally permitted to possess a firearm?

THE DEFENDANT: I do.

THE COURT: If you proceed with your guilty plea and the District Judge accepts your plea, there are very limited circumstances under which the plea may be withdrawn. Legally, the Court must be given fair and just reasons before allowing a plea to be withdrawn. Being disappointed in the sentence imposed is not a fair and just reason for withdrawal.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do all counsel and Mr. Meyers have a copy of both the indictment and the information?

MR. DANGELO: Yes, Your Honor.

MR. YODER: Yes, we do now, Your Honor.

THE COURT: Okay. I'm going to review the charges of the indictment and information to which I understand Mr. Meyers intends to plead guilty.

With respect to the indictment in Case 24-cr-405, Mr. Meyers, you've indicated that you intend to plead guilty to Count 1 of the indictment. Count 1 charges you with violating 18 U.S.C. 922(g)(1), and 924(a)(8), which pertains to being a felon in possession of a firearm and ammunition.

With respect to the information in Case Number 25-cr-634, count -- you have indicated that you intend to plead guilty to Counts 1, 2, 3, 4, and 5.

Count 1 charges you with violating 21 U.S.C. 841(a)(1) and (b)(1)(C), which pertains to possession with intent to distribute MDMA.

Count 2 charges you with violating 21 U.S.C. 841(a)(1) and (b)(1)(E), which pertains to possession with intent to distribute Ketamine.

Count 3 charges you with violating 21 U.S.C. 841(a)(1) and (b)(1)(D), which pertains to possession with intent to distribute marijuana.

And Counts 4 and 5 charge you with engaging in -- excuse me -- with violation of 18 U.S.C. 1957, which pertains to engaging in monetary transactions in property derived from unlawful activity.

Mr. Meyers, have you discussed with your attorney, Mr. Yoder, the charges in Count 1 of the indictment and Counts 1 through 5 of the information to which you intend to plead guilty?

THE DEFENDANT: I have.

THE COURT: Do you understand the charges made against you in Count 1 of the indictment and Counts 1 through 5 of the information?

THE DEFENDANT: I do.

THE COURT: All right. Do all counsel and Mr. Meyers have a copy of the plea agreement?

MR. DANGELO: Yes, Your Honor.

MR. YODER: Yes, Your Honor.

THE COURT: All right. Mr. Meyers, I'm going to ask you in here when we talk about the plea agreement, we're talking about the final plea agreement that was reviewed and signed shortly in advance of today's hearing.

Mr. Meyers, I'm looking at the final page of the plea agreement. Now, I don't know. Do all parties have a copy of the plea agreement? It looks like I have the original up here.

MR. DANGELO: We don't have a copy, Judge, of the one that you are looking at. We're looking at a copy that was previously provided to the Court, which is, I would submit -- and the defense can agree or not agree -- is almost identically similar, except for a few typographical corrections.

THE COURT: Okay. Now, it's my understanding that the changes made from the version you're looking at to

the final version I have up here included that the case number for the more recent case was added, and in two cases, it looked like there was some handwritten marks on it that were removed. Is that the full extent of the changes made?

MR. DANGELO: Yes, Judge.

MR. YODER: That's it, Judge. I think paragraph 10 and 26 had the number circled, and then the word handwritten "fix" on it. Besides that, everything else is the exact same.

THE COURT: Okay. All right. Well, if we run into any difficulties, I think -- from my review of it, I think at some point later in the document, the pagination is a little different. I don't think it's going to impact our conversation today, but if it becomes an issue, just bring it to my attention. Okay?

MR. YODER: Thank you, Your Honor.

THE COURT: Okay. All right.

So, I'm looking at page 14 of the plea agreement, and there's a line there on the final page labeled "Defendant." It has a signature on it.

Mr. Meyers, is that your signature on the plea agreement, page 14?

THE DEFENDANT: It is.

THE COURT: All right. And then I've got the more recent copy, but this is your signature on the copy

that was signed today as well; is that right?

THE DEFENDANT: Correct.

THE COURT: All right. When I look at the lower right-hand corner of each of the 14 pages of the plea agreement, I also see that it states "Defendant's Initials," and then there's handwritten initials AJM in the lower right-hand corner of each page. Mr. Meyers, did you handwrite your initials on the lower right-hand corner of each page of the plea agreement?

THE DEFENDANT: I did.

THE COURT: When you signed and initialed the plea agreement, was it your intent to signify that you reviewed, understood, and agreed to all of the terms of the plea agreement?

THE DEFENDANT: Correct.

THE COURT: Okay. Let's look next at paragraph 19 of the plea agreement, which appears on page 8 and continues on to pages 9. This has a heading over paragraph 19 titled "Waiver of Appeal and Post-Conviction Attack."

Do you see that paragraph 19, Mr. Meyers?

THE DEFENDANT: I do.

THE COURT: And did you review and go over that paragraph with your attorney before you signed and initialed the plea agreement?

THE DEFENDANT: We've talked about it somewhat.

THE COURT: All right. Well, we're going to need to be a little more specific than that. Did you go over that and ask Mr. Yoder all the questions you had about what that paragraph meant?

THE DEFENDANT: Yes.

THE COURT: All right. Do you understand that if I recommend acceptance of the plea agreement and the District Judge accepts my recommendation, you cannot appeal your sentence except as specified here in paragraph 19?

THE DEFENDANT: Should be in what? The second part?

THE COURT: I would feel better, I think, Mr. Yoder, if you look over that paragraph with him. We'll take a minute for the two of you to -- he can ask you any additional questions he has, if he has them.

(Discussion held off the record between Mr. Yoder and the defendant.)

THE DEFENDANT: Okay.

THE COURT: All right. Sir, do you understand if I recommend acceptance of this agreement and the District Judge accepts my recommendation, you cannot appeal your sentence except as provided here in paragraph 19?

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you understand if I recommend acceptance of the plea agreement and the District Judge accepts my recommendation, you cannot contest your sentence in any post-conviction proceedings except as permitted here in paragraph 19?

Do you understand that?

THE DEFENDANT: Okay. Yes.

THE COURT: All right. Thank you.

Do you understand that there may be some circumstances under which the government may have a right to appeal the sentence that's imposed?

THE DEFENDANT: (Indiscernible.)

THE COURT: Do you understand that there may be some circumstances under which the government may have a right to appeal the sentence that is imposed?

THE DEFENDANT: Okay.

THE COURT: I'm asking if you understand.

THE DEFENDANT: Not really, but yes.

THE COURT: "Not really, but yes" is not the answer I'm looking for. So. . .

THE DEFENDANT: About the appeal.

MR. YODER: Can I have a minute, Judge?

THE COURT: Yeah, why don't you take a minute.

(Discussion held off the record between

Mr. Yoder and the defendant.)

MR. YODER: Thank you, Judge. I think he understands.

THE COURT: Okay. All right. So, just so that we're clear on the record, Mr. Meyers, we've talked about how paragraph 19 specifies the limited circumstances under which you have a right to appeal any sentence that the Court may impose.

Do you understand that paragraph 19 is talking about your right to appeal?

THE DEFENDANT: Yes.

THE COURT: Okay. The additional question I asked is whether you understood that in some situations the government -- that's Mr. Dangelo here -- may have a right to appeal the sentence that is imposed.

Do you understand that you may have a right to appeal as well?

THE DEFENDANT: Yes.

THE COURT: Okay.

All right. Next, I'm going to ask Mr. Dangelo to state the essential elements of the offenses to which you intend to plead guilty. So that you can follow along, Mr. Meyers, I would like you to turn to pages 5 and 6 of the plea agreement, and we're going to be looking specifically at the contents of paragraph 11 that starts on page 5 and

continues to page 6.

Mr. Dangelo, would you please state the essential elements of each of the offenses that would have to be proven if the matter went to trial?

MR. DANGELO: Yes, Judge.

In Case Number 5:24-cr-0405, Count 1, possession of a firearm and/or ammunition by a convicted felon:

Element one is that the defendant was convicted of a crime punishable by imprisonment for more than one year;

Element two is that the defendant knew he had been convicted of a crime punishable by imprisonment for more than one year;

Element three is that following the defendant's conviction, the defendant knowingly possessed a firearm and/or ammunition;

And element four is that the defendant -- the specified firearm and/or ammunition crossed a state line prior to the defendant's possession.

In Case Number 5:25-0634, Count Number 1, possession with intent to distribute methylenedioxymethamphetamine, or MDMA:

Element one is that the defendant possessed a controlled substance;

Element two, that the defendant knew that the substance was a controlled substance;

And element three, the defendant intended to distribute the controlled substance.

In Count 2 of that same case, information, possession with intent to distribute Ketamine:

Element one is that the defendant possessed a controlled substance;

Element two is that the defendant knew that the substance was a controlled substance;

And element three, the defendant intended to distribute the controlled substance.

In Count 3 of that same case number of the information, possession with intent to distribute marijuana:

Element one is that the defendant possessed a controlled substance;

Element two is that the defendant knew the substance was a controlled substance;

And element three is that the defendant intended to distribute the controlled substance.

In Counts 4 and 5, engaging in monetary transactions in property derived from unlawful activity of the same case number and information, for both counts:

Element one is that the defendant knowingly engaged in monetary transactions;

Element two, the monetary transaction was of a value greater than $10,000;

Element three is that the monetary transaction involved criminally derived property;

Element four is that the criminally derived property was derived from specified unlawful activity;

Element five is that the defendant knew that the monetary transaction involved criminally derived property;

And element six is that the monetary transaction took place within the United States.

THE COURT: All right. Thank you.

Mr. Yoder, do you agree with the essential elements of the offenses and that those have been accurately stated by Mr. Dangelo?

MR. YODER: Yes, I do.

THE COURT: Mr. Meyers, do you understand each of the elements that were just stated by Mr. Dangelo?

THE DEFENDANT: I do.

THE COURT: Do you have any questions regarding any of the elements?

THE DEFENDANT: I do not.

THE COURT: Mr. Yoder, have you gone over the elements of the offenses with Mr. Meyers?

MR. YODER: Yes, I have.

THE COURT: And do you believe he understands the elements?

MR. YODER: He understands.

THE COURT: Thank you.

Mr. Meyers, next, I'm going to ask Mr. Dangelo to go over the potential penalties if you plead guilty to Count 1 of the indictment and Counts 1 through 5 of the information. For that purpose, I would like you to turn to pages 2 through 5. We'll be looking at paragraphs 3 through 6 of the plea agreement.

Mr. Dangelo, would you please recite the penalties associated with the charges to which Mr. Meyers intends to plead guilty? And be sure to state the maximum possible penalty, including imprisonment, fine, and supervised release, any mandatory minimum penalties, any applicable forfeiture provisions, including any specific agreements regarding forfeiture, as well as the Court's authority to order restitution, and impose a special assessment or costs.

MR. DANGELO: Yes, Your Honor.

In Case Number 5:24-cr-0405, for Count 1, felon in possession of a firearm and ammunition, the maximum period of imprisonment is 15 years. The maximum statutory fine is $250,000. The maximum period of supervised release is three years. And there is a $100 special assessment.

For Case Number 5:25-cr-0634, Count 1, possession with intent to distribute methylenedioxymethamphetamine, or MDMA, the maximum period of imprisonment is 20 years. The maximum statutory fine is $1 million. The maximum period of

supervised release is life. The minimum period of supervised release is three years. And there is a $100 special assessment.

For Count 2 of that information in the same case number, possession with intent to distribute Ketamine, the maximum period of imprisonment is 10 years. The maximum statutory fine is the $500,000. The minimum period of supervised release is three years. And there's, again, a $100 special assessment.

For Count 3 of that same information and case number, possession with intent to distribute marijuana, the maximum period of imprisonment is 20 years. The maximum statutory fine is $1 million. The maximum period of supervised release is life. The minimum period of supervised release is three years. And there's a$100 special assessment.

For Counts 4 and 5 of the same case number and information, engaging in monetary transactions in property derived from an unlawful activity, each count carries with it a maximum period of imprisonment of 10 years, a maximum statutory fine of $250,000, a minimum period of supervised release of three years, and a $100 special assessment.

There are forfeiture provisions, Judge, that are outlined on page 4 or paragraph 5 of the plea agreement. Paragraph 5, page 4 of the plea agreement are specific pieces of property that are agreed to be forfeited.

THE COURT: All right. Thank you.

Mr. Yoder, has Mr. Dangelo accurately described the applicable penalties and the forfeiture agreement?

MR. YODER: He has, Your Honor.

THE COURT: Mr. Meyers, do you understand the possible penalties for the charges against you?

THE DEFENDANT: I do.

THE COURT: Do you understand that following any prison term, you would be subject to a period of supervised release?

THE DEFENDANT: I do.

THE COURT: Do you understand if the District Judge finds that you have violated a condition of that supervised release, you may be sent back to prison for a period of up to two years?

THE DEFENDANT: I do.

THE COURT: Do you understand if the Court sends you back to prison, but for a period of less than two years, it may also impose a further term of supervised release following that imprisonment?

Do you understand?

THE DEFENDANT: I do.

THE COURT: All right. Mr. Meyers, has anyone -- and when I say, "anyone," I include your attorney, and attorney for the government, a representative of the

Court, or any other person -- has anyone made any promise to you other than what is contained in the plea agreement to persuade you to plead guilty?

THE DEFENDANT: No.

THE COURT: Has anyone threatened you, threatened anyone else, coerced you, or forced you in any way to plead guilty?

THE DEFENDANT: No.

THE COURT: Have you had an opportunity to talk with your attorney, Mr. Yoder, about how the Sentencing Commission guidelines may apply in your case?

THE DEFENDANT: Yes, yes.

THE COURT: Let's turn to pages 6 through 8 of the plea agreement. That will be paragraphs 12 through 18. This is under the greater heading "Sentencing Stipulations and Agreements."

Do you see those paragraphs under "Sentencing Stipulations and Agreements" on pages 6 through 8?

THE DEFENDANT: I do.

THE COURT: And are those terms that you went over with your attorney before you signed and initialed the plea agreement?

THE DEFENDANT: Yes.

THE COURT: Sir, do you understand that sentencing rests within the discretion of the Court, and

federal sentencing law requires the Court to impose a sentence which is sufficient, but no greater than necessary, to comply with the purposes of 18 U.S.C. 3553(a)?

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: In determining the sentence, do you understand that the Court must consider the advisory sentencing guidelines and other sentencing factors set forth in 3553(a), but that the Court may depart or vary from the guidelines?

THE DEFENDANT: I do.

THE COURT: All right. Let's look specifically at paragraph 14, which is on page 7. This is a paragraph titled "No Agreement about Sentence or Sentencing Range."

Do you see that paragraph?

THE DEFENDANT: I do.

THE COURT: Sir, do you understand that you and the government have not reached an agreement regarding the sentencing range to be used, or the sentence to be imposed in this case, other than to stipulate to the computation of the advisory sentencing guidelines offense level?

Do you understand that?

THE DEFENDANT: Yeah.

THE COURT: All right. Let's look next at paragraphs 16 and 17. That's on pages 7 and 8. Those are titled "Stipulated Guideline Computation and Acceptance of Responsibility."

Do you see those two paragraphs?

THE DEFENDANT: I do.

THE COURT: Mr. Dangelo, would you please describe the stipulated guideline computation that is set forth in paragraph 16, as well as how that would be modified by paragraph 17?

MR. DANGELO: Yes, Judge.

There's a grouping of offenses pursuant to the United States Sentencing Guidelines. And the base offense level, based on converted drug weight of 700 to 1000 kilograms of converted drug weight, results in a base offense level of twenty-eight. There is a plus two for possession of a firearm or weapon, a plus one for money laundering.

For the enhancement for maintaining a drug premises, the parties have agreed to argue that enhancement to the Court, meaning the United States can put on evidence to support that enhancement, and the defense can put on evidence to rebut that enhancement, and the Court will finally decide.

So, the subtotal of the final offense level before acceptance of responsibility is either going to be a 31 or a

33.

In paragraph 17, we anticipate that after all of that is completed, there will be a three-level -- or a two-level reduction for acceptance of responsibility issued by the Court, and an additional one level of acceptance of responsibility that will be offered by the United States, for a total of three levels off of either a 31 or a 33. And then, based on his criminal history, as will be determined by the Pretrial Services' Report, a guideline range will be developed.

THE COURT: All right. Thank you.

Mr. Yoder, has Mr. Dangelo accurately described the stipulated guideline computation agreed upon by the parties?

MR. YODER: That's accurate, Your Honor.

THE COURT: Mr. Meyers, do you understand the stipulated guideline computation that has been agreed upon by you and the government in the plea agreement?

THE DEFENDANT: I do.

THE COURT: Do you understand that any recommendations by the parties regarding sentencing are not binding upon the Court, and the Court may impose any sentence that is provided by law?

THE DEFENDANT: I do.

THE COURT: Do you understand that the Court alone will decide the applicable sentencing range under the

advisory sentencing guidelines, whether there is a basis for variance or departure from the guidelines, and ultimately what sentence to impose?

THE DEFENDANT: Okay.

THE COURT: Do you understand that?

THE DEFENDANT: I do.

THE COURT: Do you understand that the guideline sentencing range will be determined by the District Judge at the time of sentencing after a presentence report has been prepared by the United States Probation Office and reviewed by the parties?

Do you understand that?

THE DEFENDANT: I do.

THE COURT: Do you understand we cannot know for certain what guidelines will apply until the presentence report has been prepared?

THE DEFENDANT: I do.

THE COURT: Have you seen a sentencing table?

THE DEFENDANT: I have.

THE COURT: Did you review that sentencing table with your attorney?

THE DEFENDANT: I have.

THE COURT: Do you understand that the determination of your criminal history points is based on your prior record?

THE DEFENDANT: I do.

THE COURT: The points are calculated pursuant to the sentencing guidelines based in part on the age and the nature of your prior offenses.

Do you understand there would be a calculation as to which criminal history category applies in your case?

THE DEFENDANT: I do.

THE COURT: Do you understand that you and your attorney will receive a presentence report well in advance of your sentencing hearing, and you will have a right to review the report to gain a better understanding of how your criminal history will be calculated?

THE DEFENDANT: I do.

THE COURT: I would like you to look at paragraph 18 on page 8 of the plea agreement. That's titled "Criminal History Category." Sir, do you understand that there is no agreement between you and the government as to what criminal history category will apply in your case?

THE DEFENDANT: I do.

THE COURT: Do you understand that we do not yet know at this time what criminal history category is because we do not yet have the benefit of that presentence report?

THE DEFENDANT: I do.

THE COURT: Do you understand the District

Court will determine your criminal history category after receiving that presentencing report?

THE DEFENDANT: I do.

THE COURT: Do you understand that under federal sentencing law, the Judge can sentence you to a longer or a shorter period than is recommended by the guidelines?

THE DEFENDANT: I do.

THE COURT: Do you understand that the sentence the Court imposes may be different from any estimate that your attorney may have given you?

THE DEFENDANT: I do.

THE COURT: Do you understand that if the sentence is more severe than you expected, you will still be bound by your plea and will not have the right to withdraw it?

THE DEFENDANT: I do.

THE COURT: Do you understand that parole has been abolished, and if you are sentenced to prison, you will not be released on parole?

THE DEFENDANT: I did not know that.

THE COURT: All right. Would you like to have a minute to talk to your attorney about what that means?

THE DEFENDANT: No.

THE COURT: Okay. And do you understand that

supervised release is something separate from parole, which I've talked to you about here?

THE DEFENDANT: I honestly thought it was the same thing, but. . .

THE COURT: Why don't we take a minute, Mr. Yoder. Would you explain that to your client briefly?

(Discussion held off the record between Mr. Yoder and the defendant.)

MR. YODER: Thank you, Your Honor.

THE COURT: All right. Sir, do you understand that if you are sentenced to prison, you will not be released on parole?

THE DEFENDANT: I do.

THE COURT: Having discussed those rights with you, do you still wish to proceed with your guilty plea today?

THE DEFENDANT: I do.

THE COURT: All right.

Next, I'm going to ask the attorney for the United States to review the part of the plea agreement where you stipulate to the facts that relate to your conduct as charged in the indictment and the information, and to summarize the facts the government believes would be proven beyond a reasonable doubt if the matter went to trial.

As he does so, I will ask you if you agree to the

facts that he stated, and I will give you the opportunity to correct any facts that you believe to be incorrect.

For purposes of this conversation, we will be looking specifically at pages 9 through 11 of the plea agreement. That's paragraphs 21 and 22.

Now, before I ask Mr. Dangelo to go over those paragraphs, Mr. Meyers, did you go over these paragraphs 21 and 22 with your attorney before you signed and initialed the plea agreement?

THE DEFENDANT: I have.

THE COURT: And when you signed and initialed every page of the plea agreement, did you understand that you were signifying that you agreed that the facts stated in the subparagraphs of paragraph 21 are true?

THE DEFENDANT: I did.

THE COURT: All right.

So, Mr. Dangelo, understanding that Mr. Meyers has reviewed the factual paragraphs in detail with his attorney and signified this agreement through his initials, I would ask you to please summarize the fact admission paragraphs that are set forth under paragraph 21 of the plea agreement. And after you've done that summary, I will confirm with Mr. Meyers that he agrees to the facts.

MR. DANGELO: Thank you, Your Honor.

On or about August 6th of 2024, in the Northern

District of Ohio, Eastern Division, the Defendant Andrew Meyers, knowing he had been previously convicted of crimes punishable by imprisonment for a term exceed -- for a term exceeding one year, those being: Conspiracy to manufacture, possess, or deliver marijuana in Laramie Country District Court, 1st Judicial District of Wyoming, Case Number 2019-cr-34-310, on or about December 23rd of 2019, did knowingly possess in and affecting interstate and foreign commerce, a firearm, to wit: A Glock, model 19, 9-millimeter caliber, semi-automatic pistol, serial number BHCH364, and ammunition, said firearm and ammunition having been shipped and transported in interstate and foreign commerce.

On or about August 6th of 2024, in the Northern District of Ohio, Eastern Division, Defendant Andrew Meyers did knowingly and intentionally possess with intent to distribute a mixture and substance containing a detectible amount of 3, 4-methylenedioxymethamphetamine, or MDMA, a Schedule I controlled substance, at 756 Saxon Avenue in Akron, Ohio.

On or about August 6th of 2024, in the Northern District of Ohio, Eastern Division, the Defendant Andrew Meyers did knowingly and intentionally possess with intent to distribute a mixture and substance containing a detectible amount of Ketamine, a Schedule III controlled

substance, at 756 Saxon Avenue, Akron, Ohio.

On or about August 6th of 2024, in the Northern District of Ohio, Eastern Division, the Defendant Andrew Meyers did knowingly and intentionally possess with the intent to distribute a mixture and substance containing a detectible amount of marijuana, a Schedule I controlled substance, at 756 Saxon Avenue, Akron, Ohio.

On or about August 21st of 2021, in the Northern District of Ohio, Eastern Division, the Defendant Andrew Meyers knowingly engaged in and attempted to engage in monetary transactions by, and through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is funds to purchase 756 Saxon Avenue, Akron, such property having derived from specified unlawful activity, to wit: drug distribution. Andrew Meyers purchased a home located at 756 Saxon Avenue, Akron, and used certain monies having been derived from specified unlawful activity, to wit: drug distribution.

On or about August [sic] 23rd of 2023, and on or about October 24th of 2023, in the Northern District of Ohio, Eastern Division, Defendant Andrew Meyers knowingly engaged in and attempted to engage in monetary transactions by purchasing goods to improve 1085 Jason Avenue in Akron, Ohio, affecting interstate and foreign commerce, in

criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, to wit: drug distribution. Specifically, Andrew Meyers purchased a home located at 1085 Jason Avenue. After purchasing the home, Andrew Meyers used proceeds from drug trafficking to make numerous improvements to the home.

On or about August 6th of 2024, Defendant Andrew Meyers possessed approximately 882.1 grams of 3, 4-methylenedioxymethamphetamine, or MDMA, approximately 363 grams of Ketamine, approximately 2010 grams of tetrahydrocannabinol, and approximately 900 grams of delta-9-tetrahydrocannabinol.

On or about August 6th of 2024, Defendant Andrew Meyers possessed a Glock, model 19, 9-millimeter caliber, semi-automatic pistol, serial number BHCH364.

On or about October 23rd of 2023, and on or about October 24th of 2023, the Defendant Andrew Meyers engaged in money laundering, in violation of Title 18, United States Code, Section 1957.

THE COURT: All right. Thank you.

Mr. Meyers, were you able to follow along with the facts that Mr. Dangelo has read into the record here today?

THE DEFENDANT: I was.

THE COURT: And do you agree with the facts that were stated by him and set forth here in the plea

agreement?

THE DEFENDANT: I do.

THE COURT: Do you wish to make any changes to facts as stated by Mr. Dangelo and contained in paragraph 21 of the plea agreement?

THE DEFENDANT: I do not.

THE COURT: Do you admit that the facts as stated are true?

THE DEFENDANT: I do.

THE COURT: All right. Mr. Dangelo, at this point, is there any right or are there any procedural provisions I failed to account for prior to receiving the plea?

MR. DANGELO: No, Your Honor.

THE COURT: Mr. Yoder, same question, is there a right or are there any procedural provisions that I have failed to account for prior to receiving the plea?

MR. YODER: No, Your Honor. Very thorough.

THE COURT: All right. Mr. Meyers, I'm prepared now to receive your plea.

Do you want to confer with your attorney, Mr. Yoder, before I ask you what your plea is?

THE DEFENDANT: No.

THE COURT: Do you have any questions for me before I ask you what your plea is?

THE DEFENDANT: No, I do not.

THE COURT: All right. Sir, now that I have advised you of your rights and received evidence of your competence and the factual basis for your plea, how do you plead to Count 1 of the indictment in case 24-cr-405, and Counts 1, 2, 3, 4, and 5 of the information in case 25-cr-634, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: Are you pleading guilty to the offenses charged in Count 1 of the indictment and Counts 1 through 5 of the information because you are, in fact, guilty of those offenses?

THE DEFENDANT: Yes.

THE COURT: Mr. Meyers, I've considered your testimony and your acknowledgments that you are as guilty as charged in Count 1 of the indictment and Counts 1 through 5 of the information, that there's an adequate factual basis for your plea, that you know your right to trial which would be waived when that plea is accepted, and that you know the maximum possible punishment and have been advised regarding the sentencing guidelines. I therefore make the following findings:

I find that Mr. Meyers is fully competent to and capable of entering an informed plea; I find he is aware of the nature of the charges brought against him and the

consequences of his plea; I find that his plea to the offense charged in Count 1 of the indictment and Counts 1 through 5 of the information is a knowing and voluntary plea, supported by an independent basis in fact and contain each of the essential elements of the offenses charged.

I will therefore recommend that District Judge Boyko approve the plea agreement, accept Mr. Meyers' plea, and adjudge him guilty of the offenses charged in Counts 1 of the indictment and Counts 1 through 5 of the information.

Mr. Meyers, to expedite the completion of the case, the matter will be immediately referred to the United States Probation Office for the preparation of a presentence report. It is in your best interest to cooperate fully and completely with the probation officer in furnishing information for that report since that report will be important in the decision as to what your sentence will be. The presentence report will inform the District Judge's application of the 3553(a) factors and his obligation to impose a sentence that is sufficient, but no greater than necessary.

You and your counsel will have an opportunity to examine the report and to comment on it at the time of sentencing. You also have the right to be reasonably heard before your sentencing and, therefore, will be permitted to speak at your sentencing, if you choose to do so.

That disposition sentencing is set for 10:00 a.m. on Monday, May 4th, before Judge Boyko.

Now, Mr. Meyers previously waived his right to a detention hearing in the case 24-cr-405. And Mr. Yoder, do I understand correctly that Mr. Meyers is also intending to waive his right to a detention hearing in the new case, 25-cr-634?

MR. YODER: Your Honor, that is my understanding. We went over that today prior to court, and I believe he's executed a waiver of detention hearing.

THE COURT: Thank you.

All right. Mr. Meyers, you have a right to have a hearing to determine whether you should be detained pending the trial in this matter. You may also waive your right to a detention hearing, reserving your right to have a hearing at a later time.

Sir, did you have an opportunity to consult with your attorney regarding your right to a detention hearing on the new case, 25-cr-634?

THE DEFENDANT: I did.

THE COURT: It's my understanding, sir, that you completed a waiver of your right to a detention hearing in that case with the assistance of your attorney.

Is that correct?

THE DEFENDANT: Correct.

THE COURT: I have a copy of that waiver here in front of me. There is a signature on the line labeled "Defendant."

Is that your signature?

THE DEFENDANT: That is.

THE COURT: And do you understand that by signing that waiver, you are -- you'll be held in custody either until the trial occurs in the case or until your attorney requests that the Court grant you a detention hearing in the matter?

THE DEFENDANT: I understand.

THE COURT: Understanding that, do you still wish to waive your right to a detention hearing at this time?

THE DEFENDANT: Yes, I do.

THE COURT: I'm going to find that your waiver of the detention hearing is knowingly and voluntarily and intelligently made. I accept the waiver of the detention hearing, and Mr. Meyers is remanded to the custody of the United States Marshal pending further proceedings.

Mr. Dangelo, at this time, is there anything further on behalf of the United States?

MR. DANGELO: No, Your Honor.

THE COURT: Mr. Yoder, anything further for the defense?

MR. YODER: No.

Thank you, Your Honor.

THE COURT: Mr. Meyers, do you understand everything that has just occurred?

THE DEFENDANT: I do.

THE COURT: Do you have any final questions for me before we conclude today?

THE DEFENDANT: I do not.

THE COURT: Okay. Thank you all.

We are adjourned.

(Proceedings concluded at 3:28 p.m.)

\- - -

**C E R T I F I C A T E**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter. This transcript was prepared to the best of my ability from a digital audio recording of the proceedings provided by the Court.

*/s/ Stacey L. Kiprotich* ________ *2/6/2026*
STACEY L. KIPROTICH, RMR, CRR DATE