IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 5:24CR0405 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | |
| | ) | |
| ANDREW MEYERS, | ) | UNITED STATES OF AMERICA'S |
| | ) | SENTENCING MEMORANDUM |
| Defendant. | ) | |

Now comes the United States of America, by and through its counsel, David M. Toepfer, United States Attorney, and Joseph P. Dangelo, Assistant United States Attorney, and respectfully submits the following sentencing memorandum setting forth the United States of America's position regarding the sentencing for Defendant Andrew Meyers. The United States recommends a guideline range sentence of 132 months in the Bureau of Prisons.

## I. FACTUAL BACKGROUND

The United States believes that the facts underlying this matter are set forth adequately in the final Presentence Investigation Report ("PSR"). The United States highlights the facts below as especially relevant to sentencing in this matter.

In December of 2023, the Bureau of Alcohol, Tobacco, and Firearms and the Federal Bureau of Investigation began an investigation into a drug trafficking organization in the Medina, Portage, and Summit Counties. (Presentence Investigation Report, PSR, PageID 5). The Defendant was identified as a distributor of controlled substances in the conspiracy. (*Id.*).

On August 6, 2024, law enforcement conducted a search warrant on the Defendant's residence at 756 Saxon Avenue, Akron, Ohio. (*Id.*, PageID 7). Law enforcement discovered a Glock 19, semiautomatic firearm and ammunition in the Defendant's bedroom. In addition,

882.1 grams of MDMA, 363 grams of ketamine, 2,010.1 grams of Tetrahydrocannabinol, and 900.4 grams of delta-9-Tetrahydrocannabinol, items used for the manufacturing of THC products, a laboratory, packaging materials, digital scales, a press, and a money counter were discovered. (*Id*.). Law enforcement also seized a watch, 2018 BMW motorcycle, a Suzuki dirt bike, a motorhome, and $15,396 in U.S. Currency were seized. (*Id*.).

During the course of the conspiracy, the Defendant sent two wire transfers to purchase a property at 1084 Jason Avenue, in Akron, Ohio. (*Id*., PageID 8). An investigation revealed that the wire transfers were made in an attempt to lauder proceeds from the Defendant's drug distribution business. (*Id*.). The Defendant continued to launder the proceeds by improving the property on Jason Avenue and a second property (756 Saxon Avenue) which was purchased with $43,060 in cash. (*Id*.).

On October 8, 2024, a search warrant was executed at 1166 Lafayette Road, Lot F29, in Medina, Ohio. Law enforcement recovered more THC products, wrappers, nerd candies, cell phones, and digital scale. (*Id*., PageID 8). The Defendant was taken into custody on that date. (*Id*.).

A search of the Defendant's cell phone, cell phones of other co-conspirators, and other electronic surveillance revealed that the Defendant purchased and supplied MDMA, ketamine, and other controlled substances to other drug distributors and drug customers. (*Id*., PageID 5-8).

## II. <u>PROCEDURAL BACKGROUND AND OFFENSE LEVEL COMPUTATION</u>

A federal grand jury on October 30, 2024, returned an indictment in case number 5:24CR0405 charging the Defendant with being a Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(1). (*Id*., PageID 4). On December 18, 2025, a five count information was filed in case number 5:25CR0634 charging the Defendant with

Possession with Intent to Distribute MDMA in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), Possession with Intent to Distribute Ketamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(E), Possession with Intent to Distribute Marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D), and two counts of Engaging in Money Laundering Transactions in Property Derived from Unlawful Activity, in violation of 18 U.S.C. § 1957. (*Id.*). The Defendant and his mother agreed to the forfeiture of the real properties at 756 Saxon Avenue in Akron, Ohio and 1085 Jason Avenue in Akron, Ohio. (*Id.*).

On January 22, 2026, the Defendant pled guilty to all counts of the indictment in 5:24CR0405 and the information in 5:25CR0634. (*Id.*).

The plea agreement outlined an anticipated guideline range with the stipulation that the parties were free to argue the applicability of the Maintaining a Drug Premises enhancement under United States Sentencing Guideline Section 2D1.1(b)(12). (*Id.*, PageID 3). In addition, the parties were free to recommend whatever sentence it believes to be appropriate. (*Id.*).

## III. MAINTAINING DRUG PREMISES ENHANCEMENT

The United States would advocate for the Court to apply the 2-level enhancement under United States Sentencing Guideline Section 2D1.1(b)(12) as the Defendant maintained the residence at 756 Saxon Avenue for the purposes of manufacturing and distributing narcotics.

In evaluating the facts of the case and the Defendant's objection to applicability of the 2-level enhancement, the United States Probation and Pretrial Services Office found that the enhancement applied. (*Id.*, PageID 11).

United States Sentencing Guideline Note 17 to section 2D1.1(b)(12) instructs:

> Subsection (b)(12) applies to a defendant who knowingly maintains a premises (i.e., a building, room, or enclosure) for the purpose of manufacturing or distributing a controlled substance, including storage of a controlled substance for the purpose of distribution.

> Among the factors the court should consider in determining whether the defendant "maintained" the premises are (A) whether the defendant held a possessory interest in (e.g., owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises.
>
> Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises. In making this determination, the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes.

In response to the Defendant's objection to the applicability of the 2-level enhancement, the PSR notes:

> In *United States v. Tripplet*, No. 23-1676 (6th Cir. 2024), the court found that the defendant need not maintain the premises only for drug operations for the drug premises enhancement to apply, so long as manufacture or distribution is one of the primary or principal uses of the residence. As evidenced by the offense conduct section of the report, items found during the search indicated that marijuana edibles were being manufactured at the defendant's residence. There is evidence of narcotics distribution from the home, specifically the text messages described in paragraph 10 and 11 of this report which indicate that the buyer is to meet "Drew" at 756 Saxon.
>
> According to USSG §2D1.1, comment. (n.17), among the factors the court should consider in determining if the defendant maintained the premises are whether the defendant held a possessory interest (e.g., owned, or rented) in the premises and the extent to which the defendant controlled access to, or activities at, the premises. In this case, not only did the defendant own the premises (although he deeded it in his mother's name), he resided at the residence, thus exerting control over activities there.
>
> The fact that the defendant did not live there alone but had a roommate is of no consequence to application of this enhancement. *Tripplet* also found that it made no difference to application of the enhancement that Tripplet was not living alone in his residence. *Tripplett* further noted that the evidence was distributed throughout the house, and "substantial quantities of diverse illicit substances suggest a distribution hub, the large amount of cash is potentially indicative of drug sale proceeds, the firearm may serve as protection…" These factors suggested that drug activity was a primary use of the space.
>
> Like *Tripplet*, Meyers had a substantial quantity of diverse illegal substances, a large amount of cash, and a firearm. His residence appears to have been the hub of Meyers's drug activity. Tools of the drug trade were recovered from the residence, including scales, packaging materials, a pill press, a money counter, and materials for

> manufacturing edibles. The firearm suggests the need to protect his drugs. The quantity of drugs seized at his residence was significant: 882.1 grams of MDMA; 363 grams of ketamine; 2,010.1 grams of Tetrahydrocannabinol, and 900.4 grams of delta-9-Tetrahydrocannabinol. He had a room set up in his residence with the raw materials to make marijuana edibles. Case agents never observed Meyers going to an actual lawful occupation during the time frame of the offense. The drug activity was more than just incidental, and the principal use of the residence appears for him to have a place to run his drug business. The enhancement is appropriately applied in this case.

(Id., PageID 27-28).

The United States agrees with the reasoning in the PSR regarding the applicability of the enhancement. After a careful review of the evidence in this case, the Defendant used 756 Saxon Avenue as a store front for his drug trafficking activity. The Defendant manufactured and stored MDMA, ketamine, and THC products at the 756 Saxon along with supplies he used to sell and manufacture those substances.

The Defendant also sold controlled substances from 756 Saxon as evidenced by the text message and electronic surveillance communications that were captured.

The applicability of the enhancement was appropriate.

## IV. <u>SENTENCING RECOMMENDATION</u>

The PSR calculated the final offense level for this case to be a 30 after acceptance of responsibility and found that the Defendant was a criminal history category II. The United States Agrees with that calculation.

The recommended guideline range for an offense level 30, criminal history category II is 108-135 months. (*Id.*, PageID 20).

After having calculated the applicable guideline range, the Court is required to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, to wit: [T]he nature and circumstances of the offense and the history and characteristics of the defendant:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a). In determining what sentence to impose, the Court is directed to consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed [to achieve the purposes of sentencing, cited above];
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established [by the law and the applicable U.S.S.C. Guidelines Manual];
> (5) any pertinent policy statement [issued by the U.S.S.C.];
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

*Id*.

In the case at hand, a guideline sentence of 132 months is appropriate due to the prolonged drug trafficking activity that the Defendant engaged in prior to his arrest in October of 2024. The Defendant sold large amounts of addictive substance to other drug dealers and addicts such as MDMA, ketamine, and marijuana.

The Defendant's business was so profitable that he had to find a mechanism to launder and hide his profits in the items that he purchased and in the properties he improved.

Most troubling is that this is not the Defendant's first conviction for drug trafficking. The Defendant was convicted of a fourth-degree felony Drug Trafficking in 2014 in Medina County Juvenile Court. (*Id*., PageID 13).

In addition, he was federally convicted 2020 of Conspiracy to Manufacture, Deliver, or Possess Marijuana in the District Court of Laramie County, Wyoming. (*Id*., PageID 14). The facts of that case indicate that the Defendant possessed marijuana and THC in liquid form which

could be used to manufacture additional products. (*Id.*). The Defendant was placed on probation for that federal conviction, violated the terms of his probation, and currently faces an arrest warrant from that Court. (*Id.*, PageID 13-14).

It is apparent that these two prior convictions nor their sentences did not deter the Defendant from immediately re-engaging in his drug trafficking and manufacturing business. The Defendant is on probation in Wyoming for similar offenses. The Defendant has decided he does not want to comply with the drug laws of the United States.

Therefore, in light of the aforementioned § 3553(a) factors as well as all of the information before this Court, the United States recommends a stiff but fair sentence of 132 months sentence in the Bureau of Prisons which is sufficient but not greater than necessary to achieve the purposes of sentencing.

**Respectfully submitted,**

**DAVID M. TOEPFER**
**United States Attorney**

/s/ Joseph P. Dangelo

**Joseph P. Dangelo (OH: 0079898)**
Assistant United States Attorney
Federal Building
Two South Main Street, Room 208
Akron, OH 44308
(330) 761-0530
(330) 375-5492 (facsimile)
Joseph.Dangelo@usdoj.gov